Next case is 4-12-11-47. Rubel v. Miramontes. For the appellant, William Gregory. Are you here, sir? And for the appellee, Lyndon McClain. Mr. Gregory, you may proceed. Counsel. My name is William Gregory. I'm here on behalf of the defendant, Hector Miramontes, in this case. As the court's aware, Mr. Miramontes was stopped as part of a roadside safety check in McLean County. And as a result of that stop, he was arrested and charged with a DUI. As part of the procedure in the DUI hearing, we filed a motion to suppress in regards to his stop, which the court denied. And that is the purpose that we're in front of this court today, is the court denied our motion to suppress. And in regards to the motion to suppress, the defendant is challenging the validity of how the roadside safety check was conducted. Sergeant Dittmer, who was the officer in charge of the roadside safety check, testified that at the scene of the roadside safety check prior to starting, he had made the decision to stop all vehicles, although the paperwork wasn't completed until sometime the next morning. And the timeframe for some of what occurred was a little uncertain in the defendant's mind as to how everything was decided. As part of the testimony, Sergeant Dittmer testified that he gave the individual field officers who were conducting this roadside safety check discretion to waive cars through the safety check and made it to where they were able to make the decision as to when cars would be waived through. Was there a purpose for that indicated? His explanation was that he was giving them discretion to waive cars through if there was some sort of a backup or for safety reasons or something along those lines. But he did testify that he gave the individual officers discretion as to when to make that decision and that that was not some decision that he was making or that somebody who was not standing there doing the checks was going to be doing, but that each individual officer had the right to waive cars through the safety check. Is it your position that it's inappropriate for the officers to have any discretion? In regards to waiving cars through, I mean, I would argue that that's the whole point of the regulations that were discussed in the prior cases, is that the discretion should be with the people who set this up. I mean, obviously there's requirements in regards to the location being preselected by someone who's not there and there being some sort of a public notice, you know, that type of thing. And then there's obviously Sergeant Dicker who's in charge of this, who is the field officer in charge. And I guess from the defendant's perspective, I mean, those are the appropriate individuals who would make a decision as to which cars are allowed to pass through and which cars are stopped and not the actual individual officers that are standing there checking the cars as they go through. Is there any reason to think, is there any evidence supporting the claim that the discretion such as it was, since they were said to stop every car except for safety and traffic concerns, I guess if things backed up too much to let a bunch of cars go through. Two questions. Is there any reason to think, one, that wasn't done on that basis, and two, assuming it was done on that basis, is there anything improper in doing that? In other words, if an officer said, stop all the cars on this road, but if because of traffic or safety concerns, traffic is backing up too much and you think that this is a problem, then let the cars through. First question is, is that an appropriate thing to, discretion to give to an officer? My answer to that would be no. So, even if it's true that there are legitimate safety or traffic concerns, he can't, he can't deviate from stopping every car? Well, the instruction was to stop every car. In this case, the instruction was to stop every car. So... You didn't answer my question. Stop every car, but if for safety or traffic concerns, it's necessary to let some through, go ahead. Is that permissible? And I would say no. I would say that's not permissible, because you've got Sergeant Dittmer there. Those decisions should be made by Sergeant Dittmer, and not by the individual officer that's standing there looking at the car. So, if Dittmer were there... Dittmer was there. Well, is it okay for him to make that call? I believe it would be okay for him to make that call. But for the individual officer there... I mean, because obviously somebody who's like, I forget the name of the officer who actually initially set this up and did the actual organization of this. There were officers that were named in the police reports, or in the guidelines that made the determination when this was going to happen, where this was going to happen, the time that this was going to happen. Those officers can't say... Well, actually, they could say... I take that back. They could say, you know, in this location, we know where this is going to happen. We've pre-selected this location for a reason. And we believe that this is an appropriate location to handle this. And if the cars get backed up to X point, then you need to let some people through in order to clear the traffic so that it doesn't block the intersection just north of there. Because there's cross-traffic and there's some sort of a danger there. They can do that because they've pre-selected this area. They've seen the area. They know where they're setting this up. This is not something that's just blind that they should do it. As far as that's concerned... Because one of the things, like in People vs. Wells, they talked about the presence of procedural guidelines and the absence of discretion in individual officers. Well, counsel, let's take a look at the Bartley case, which I think outlines really well what we should be considering. And in the Bartley case, they go over several cases and pretty much set out for us when a problem that they talk about roadblocks being invalidated when few, if any, restraints on police discretion existed. That's not what we have here, correct? Well, the individual officers, though, as far as their discretion, the only thing they were told to stop every car. I mean, that was the only real restraint that they were given. So you dispute that they were told that they could wave cars through for safety reasons or traffic backup? You dispute that? I dispute that that's what they were told? No, I'm not disputing that that's what they were told. Well, you keep saying, well, they were just told to stop every car. And you're looking at the fact that they could wave through. Then you misunderstood what I said or I misunderstood what you said. No, I'm saying that in regards to the specific guidelines as to which cars to stop, they were instructed to stop every car. Well, I was right there. That would be okay. If they stopped every car, correct. If they were instructed to stop every car and they did, there's no issue. Correct. But then the discretion, though, I mean, the problem is you're giving them discretion as to say when this is a problem, when there's a traffic concern, when there's a safety concern. I mean, you've got an officer here, like the state gave an example. They said, well, what if four or five cars stop, come up? And that wasn't anticipated by the officers scheduling this. Well, actually, I would assume that was anticipated by the officers scheduling this because they preselected this location for a specific reason. I mean, they don't do this in the middle of the most busy street and the middle of the most busy time in order to do that because of those specific reasons. They select a place and a location that will be safe and will be reasonable to conduct this sort of a stop. And when you give an individual officer discretion as to say this is a safety concern as far as I'm concerned, well, what stops that officer from saying, okay, two or three cars just came up. Oh, you know what? Those two or three guys, they look like the judges. So I'm going to wave them through because I think we've got to back up and we're going to, you know, there's a traffic safety concern. Okay. And then four or five cars come up and they look at it and they say, oh, that's Mr. Miramontes. He's a Latino. He looks a little suspicious. I think I want to stop these cars. I understand there may be four or five cars backed up, but I think we want to stop these cars because I can stand here and I can look in that car and I can see who's driving it and I can make the decision as to whether that's a safety concern or not. And to me, that's no longer a safety concern because those are the individuals that I think I want to stop. What evidence of that is part of this record? Well, the evidence of that is that Mr. Miramontes was there. We have the videos which, I mean, the videos clearly, in my opinion, clearly show that there were cars that were waved through. And while the officers tried to say, well, you can't necessarily see because there's a safety area somewhere to the side that maybe is not on that video, there are cars that clearly proceed through that. And if you look at the video in regards to when cars appear to be let through and when they don't, it doesn't appear to be a systematic approach. It doesn't appear to be where somebody said, hey, you know what, because Sergeant Dimmer could have very well said, or the officers who set this up could have very well said, hey, if you see the cars get backed up to this point, that's a safety concern. Start letting a few people through so that we can get the cars backed up in front of this point. But they didn't do that. They left that up to the individual officers to make that discretion. And it's the defendants understanding that's the whole point of this. That's the whole point of not giving them discretion is so that they can't sit there and say, I'm going to pick your car, but I'm not going to pick your car. I'm going to pick all the minority cars, but I'm not going to pick the white cars. I'm going to pull over all the people who appear to be Mexican because they may not have a valid license. And so maybe I can stop them and get them on something else versus not stopping somebody else. And so when you give those individual officers the discretion to say, I think this is a concern, or I don't think this is a concern, that's not what this is supposed to be. This is supposed to be something where the officers are sitting there and saying, OK, I'm stopping every car unless somebody tells me not to. I'm stopping every car because I don't have the discretion to say you go through and you don't go through. I don't have the discretion to look in that window and make a decision as to which cars I'm stopping and which cars I'm not. And in this case, Sergeant Dittler was clear that he gave them the discretion to do that. Now, yeah, maybe they would have had to say, OK, there's two or three cars here. I mean, if there's just one guy pulling up, yeah, I have to stop him. But if there's two or three, can I wave one guy through and stop another one? Or if there's four or five cars there, can I stop the first one and then let the next three go through? Or do I let the first three go through and then stop the fourth one? How do I make that decision? Well, he said, that's up to you. I'm going to leave that up to you to make that decision as to which of those cars, when it comes to a backup, which of those cars goes through. I don't care. You decide. That's wrong. Because you've got an officer looking in that window and making that decision. And that's not what this is supposed to be. And that's why I'm saying they could make that decision. He could have stood there and told them, if you get five cars, let all five through until somebody else comes up. If traffic gets backed up to Orlando, which was the next street up, OK, fine. Let all of them through. You know, somebody in charge of this could have made that decision beforehand. Or they could have left it up to Sergeant Dimmer. He could have been sitting in a car on the side where he couldn't see who's coming up and made that decision. And that's why the defendant feels like this was wrong. I mean, was he stopped because he was Latino? I don't know. The officer's not going to come in and say, yes, I stopped Mr. Miramontes because he was Latino, but I let the guy behind him go because he wasn't. Can an officer still do that if the instructions are to stop every car? If the officer's instructing stopping every car, he can stop every car. That's the instructions. But can he also possibly wave a car through? I mean, what would prevent the officer from doing that? The fact that the instructions are to stop every car. I mean, there has to be a determination that there's a traffic or safety issue. But what I'm saying is, if you're giving the officer the unbridled discretion to make that decision, then it's counterproductive. You're allowing them to still make that decision within that context. And to say, I've got five cars. I think I should let somebody through. Which ones go through? Which ones don't? And that's the problem that the defendant has with this. You just threw in, in addition to the word discretion, the word unbridled, which that's what we're looking for. That's the problem, unbridled discretion, correct? Is that the same as counsel? Bartley uses the word unbridled. Wells does not. So Bartley is an Illinois Supreme Court case, correct? You're correct. So Bartley uses the word unbridled, but again, there was no instructions given to them, as far as we know, as to what constituted a traffic or safety concern. So that would be their unbridled discretion as to whether this is a traffic or safety concern and what that constitutes, what makes up a concern. How does an individual officer know if this is a traffic or safety concern? Well, it's up to me. I need to look at the situation and I have unbridled discretion. I have no guidelines, no rules, no regulations, nothing to tell me what a traffic or safety concern is. That is completely up to me to make that decision and how to handle that decision. In this case, Sergeant Dittmer gave him unbridled discretion to make a decision as to what was a traffic or safety concern. There were no rules, no regulations, no guidelines, nothing to tell those individual officers what that would be. And so they were able to make that decision. And based on the videos, I believe that there were clearly cars waved through. I don't believe there was any systematic approach to that. And for those reasons, we believe that this stopped because there were no guidelines in regards to instructions on how or what a traffic or safety concern was and that the individual officers standing there were given the discretion to do that. We do not believe this traffic safety stop should have been allowed and we would ask the court to reverse the trial court's decision and allow the motion to suppress. Thank you, counsel. Ms. McClain. May it please the court? The state is in favor of a roadblock, which was designed to stop all vehicles unless traffic was backed up was not unconstitutional. Case law lists relevant factors and I think it's important to keep in mind these are factors, they're not absolute requirements. This court should look at the totality of the circumstances to see if the roadblock was unconstitutional. One case, the Bartley case, we believe was identical to the procedure used in this case. In Bartley, the plan was to stop every westbound vehicle unless traffic backed up. On one occasion, traffic did back up and cars apparently were way through the roadblock. The court stated that the crucial inquiry is whether officers are acting with unbridled discretion. It doesn't say some discretion, it says unbridled discretion. In that case, the court noted that the discretion of officers was reduced. When the decision to establish a roadblock and the site of the roadblock are selected by supervisors. The discretion of field officers is also reduced when vehicles are stopped in a pre-established systematic fashion. In this case, the state would maintain that the document, the roadside safety check supervisor's checklist outlines the procedures to be used. The officers involved in the roadblock were briefed on how to do the roadblock. The officers were told to stop all vehicles. However, if traffic volume necessitated, sequence checking, according to this document, sequence checking could be instituted by the supervisor. And also, if traffic was backed up enough to cause a safety concern or undue delay for motorists, the backup should be cleared up. That's what the document says. So, the officers were given some discretion, but not unbridled discretion in violation of Bartley. Also, the officers were not acting with unbridled discretion if they used objective criteria to determine who to wade through. The state would argue that there was objective criteria, in this case, outlined by the procedures. The objective criteria was backup of traffic that would endanger officers or vehicles. Therefore, the officers did not act with unbridled discretion. Guidelines to stop every vehicle unless traffic was backed up was sufficiently nonrandom to allay motorists' fears of being arbitrarily singled out. I asked the court to consider my arguments and affirm the child corporate law. Okay, thank you very much. Mr. Gregory, anything further, sir? Just in regards to the document, the checklist that she received, I would just like to point out that the roadblock started on June 17th. That form was not completed until June 18th. The Sergeant Denver dated it and signed it on the 18th, and there's no evidence that a checklist was ever given to the individual officers. Okay, thank you, counsel. We'll take this matter under advisement. We'll recess until after lunch.